IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | | |
|---|---|---|
| CHARLIE DANIEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 3:94cv1253-MHT |
| GENERAL MOTORS ACCEPTANCE | ) | (WO) |
| CORPORATION and MOTORS | ) | |
| INSURANCE CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

Plaintiff Charlie Daniel brought this lawsuit in state

court in 1994 against defendants General Motors Acceptance

Corporation (GMAC) and Motors Insurance Corporation (MIC),

asserting that GMAC and MIC fraudulently misrepresented

the terms of an auto insurance policy that would be

purchased on his behalf.   GMAC and MIC removed this

lawsuit from state court to federal court on the basis of

diversity-of-citizenship jurisdiction, see 28 U.S.C.

§§ 1332, 1441, and this court, pursuant to an agreement of

the parties, conditionally dismissed this case in 1995.

This case is currently before the court on Daniel's

July 2007 motion to reinstate.  For the reasons that follow, the motion will be denied.


I. FACTUAL AND PROCEDURAL BACKGROUND

The Alleged Misunderstanding: This federal case, newly revived after 12 years, resulted from events in 1988, when Daniel purchased a Ford Escort under a retail installment contract assigned to GMAC.  The contract mandated that, if Daniel failed to procure insurance, GMAC would obtain insurance itself and add the premium to Daniel's monthly car payments.  When Daniel neglected to provide his own insurance, the GMAC-supplied policy was imposed.  GMAC avers that, at some point, Daniel's payments ceased and he defaulted under the terms of the retail contract.

The misunderstanding leading to this federal lawsuit emerged in May 1993, when Daniel's car was totaled in an accident.  The insurance of the other driver in the accident paid GMAC $ 4,025, but Daniel still owed $ 380.03 on his retail contract.

GMAC's State-Court Collection Suit:   In September 1993, GMAC sued Daniel in state court to recover that amount.   In June 1994, after Daniel supposedly failed to appear in GMAC's collection suit, the state court ordered Daniel to pay $ 437.04 to GMAC.   Two months later, Daniel filed a motion to set aside the state-court collection judgment, arguing that GMAC had misrepresented that its insurance would pay off his balance in full.

Daniel's Federal Fraud and Conspiracy Suit:   In September 1994, before any ruling had been entered on his motion in GMAC's collection suit, Daniel sued GMAC and MIC in state court for fraud and civil conspiracy.   Shortly thereafter, the state court in GMAC's collection suit denied Daniel's motion to set aside the judgment.   GMAC and MIC removed Daniel's fraud and conspiracy suit to this federal court.

The Massey State-Court Class-Action Lawsuit: Meanwhile, in December 1993, a class-action lawsuit, Massey v. General Motors Acceptance Corp., was brought against GMAC and MIC in state court on the same

allegations of fraud concerning their forced purchase of collateral insurance. Because Daniel was a member of the certified class, this federal court in November 1995 entered an order that, "[b]y agreement of the parties," Order (Doc. No. 55), dismissed Daniel's individual case "without prejudice to the right of any party to petition to reinstate this action to pursue any claim embraced herein not adjudicated in the state-court case." Id. The court's order further provided, by agreement, that "any petition for reinstatement must be filed within 60 days of the state-court action that would entitle the party to seek reinstatement." Id.

Proceedings in Massey continued until the Alabama Supreme Court decertified the plaintiff class in May 2004. Gen. Motors Acceptance Corp. v. Massey, 893 So.2d 314 (Ala. 2004). GMAC settled with the named plaintiffs in August 2006.

Daniel's Motion to Reinstate: Daniel did not move to reinstate this federal suit until July 12, 2007, over

three years after the decertification of the <u>Massey</u> class,
which permitted Daniel to pursue this federal case again.

## II. DISCUSSION

The basis in federal law for Daniel's motion to
reinstate would appear to be the catch-all Rule 60(b)(6)
of the Federal Rules of Civil Procedure, which permits a
court to relieve a party from a "prior judgment, order, or
proceeding" for any reason not listed in Fed.R.Civ.P.
60(b)(1)-(5) (<u>e.g.</u>, mistake, excusable neglect, fraud, and
misrepresentation) "that justifies relief," Fed.R.Civ.P.
60(b)6; the Rule 60(b)(6) motion "must be made within a
reasonable time." Fed.R.Civ.P. 60(c)(1). While the
movant must demonstrate that "the circumstances are
sufficiently extraordinary to warrant relief," <u>Toole v.
Baxter Healthcare Corp.</u>, 235 F.3d 1307, 1317 (11th Cir.
2000), this catch-all provision creates a "grand reservoir
of equitable power to do justice in a particular case."
<u>Nisson v. Lundy</u>, 975 F.2d 802, 806 (11th Cir. 1992).
Whether a movant may access this equitable power depends

5

on the discretion of the district court.  <u>Toole</u>, 235 F.3d at 1317.

GMAC offers two reasons for why Daniel should not be permitted to reinstate this suit.  First, it argues, Daniel filed his motion to reinstate years after the 60-day window provided by the court's order and thus much too late.  Second, it maintains that Daniel should have filed his fraud and conspiracy claims as compulsory counterclaims in GMAC's state-court collection action and that Daniel's failure to do so prevents him from raising them now.

### A. Whether Reinstatement Is Time-Barred

To be sure, Daniel had the unconditional right under the November 1995 agreed-upon order to have this case reinstated if reinstatement was sought within the 60-day period set forth in that order; that unconditional right did not, however, extend outside that 60-day period. Whether this case should be reinstated rests on whether the specific circumstances of this case warrant this

6

court's exercise of its Rule 60(b) equitable power. GMAC contends that equity does not warrant an extension outside the 60-day period because Daniel's reinstatement motion is untimely.

The 1995 dismissal order in this federal case provided, as stated, that "any petition for reinstatement must be filed within 60 days of the state-court action that would entitle the party to seek reinstatement." Order (Doc. No. 55). Daniel, however, waited over three years after the state-court class decertification (which permitted him to pursue his federal lawsuit again) to file his motion to reinstate. Daniel argues that he should be excused from his tardy filing if he can prove both that he was entitled to notice of the <u>Massey</u> class's decertification and that his delay was due to lack of notice.[1]

_____

1. In his brief, Daniel initially seems to argue, incorrectly, that the termination of the class action was marked not by <u>Massey</u>'s decertification but by the settlement between GMAC and the named plaintiffs. Pl.'s Br. (Doc. No. 63), at 5-7. He does state that he did not receive notice of the decertification, but his argument is squarely centered on the settlement. <u>See</u> <u>id</u>. at 10. Even though Daniel was not entitled to notice of the

On its face, Rule 23(e) of the Alabama Rules of Civil Procedure demands notice to class members before the court may authorize certain major changes to the suit. This rule, which is similar to Fed.R.Civ.P. 23(e)(1)(A)-(B), states that a "class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." Ala.R.Civ.P. 23(e) (emphasis added).[2] The language of the rule makes clear that some notice is required; it states that notice "shall" be given, and the only discretion is how the court chooses to direct the giving of notice.

---

settlement, since it did not bind the class, he may be using the settlement merely as a mechanism to assert his expectation that he would be alerted when the class action was terminated.

2. Ala.R.Civ.P. 23 is identical to an earlier version of Fed.R.Civ.P. 23; the federal rule was amended in 2003 "to strengthen the process of reviewing proposed class-action settlements. ... [C]ourt review and approval are essential to assure adequate representation of class members who have not participated in shaping the settlement." Fed.R.Civ.P. 23(e) Advisory Committee's Notes on 2003 Amendments.

Dismissal of a case indisputably requires notice to class members, but it is not apparent whether decertification qualifies as a dismissal.  The Eleventh Circuit Court of Appeals, whose cases on Fed.R.Civ.P. 23 are persuasive but not binding as to Ala.R.Civ.P. 23, Ex parte Exxon Corp., 725 So.2d 930, 933 n.2 (Ala. 1998), announced in  Birmingham Steel Corp. v. Tennessee Valley Authority that "once a district court has decertified a class, it must ensure that notification of this action be sent to class members, in order that the latter can be alerted that the statute of limitations has begun to run again on their original claims."   353 F.3d 1331, 1339 (11th Cir. 2003).   The court acknowledged that decertification is not equivalent to dismissal but found that applying Rule 23(e) to decertification is necessary to comply with the policy behind the rule's enactment: ensuring that class members will not "find themselves time-barred without knowing it" on their individual claims.  Id. at 1338-39; cf. Pearson v. Ecological Sci. Corp., 522 F.2d 171, 176-77 (5th Cir. 1975) (rule is

designed to "assure that any person whose rights would be affected by a dismissal or compromise has the opportunity to contest the proposed action") (quoting 7A <u>Wright & Miller</u>, <u>Fed. Practice & Procedure</u> § 1797, at 234 (1972); Advisory Committee's Notes to Proposed Rules of Civil Procedure, Rule 23, 1966).[3]  Between the language of the rule and policy considerations surrounding it, Daniel's conclusion that he would be given notice upon termination of the class-action suit is not only reasonable but to be expected under Ala.R.Civ.P. 23(e).[4]  In contrast, the 2006 settlement agreement between GMAC and the named plaintiffs in <u>Massey</u> had no effect on Daniel's rights, since he was technically no longer a member of the class.

---

3.   In <u>Bonner v. Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

4.   Daniel is not entirely clear about the proper source of his notification.  In his motion to reinstate, Daniel asserts that GMAC's counsel would notify his counsel, <u>see</u> Pet. to Reinstate (Doc. No. 56), at 10.  In his brief, Daniel seems to shift the blame for his lack of notice from GMAC's counsel to the state court.

Although Daniel was entitled to expect notice, two other important questions remain.  The first is whether he was indeed given adequate notice.  Daniel asserts that he received no notice of the decertification order at all,[5] while GMAC charges him with knowledge of it because it was a published decision.  The standard for delivering notice under Rule 23(e) is unclear; while the rules and case law speak to the content of the required notice, see Adams v. Robertson, 676 So.2d 1265, 1284 (Ala. 1995) (explaining necessary content to satisfy due process requirements and notice standards under Rule (23(e)), neither the federal nor Alabama rules clarify the necessary procedures for giving notice under Rule (23)(e). Because the Alabama rule specifies that notice shall be given "in such manner as the court directs," it should not be assumed that the more

_____

5.    Daniel does not specifically assert that he did not receive notice of the decertification of the Massey class, but the court presumes that he would argue that he did not receive notice based on his statement that the "only notice Plaintiff ever received in the Massey litigation was notice of the original hearing date set in December of 1995 for his Motion to Opt Out, which was continued."  Pl.'s Br. (Doc. No. 63), at 6.

familiar notice requirements of Rule 23(c)(2) apply.[6]
Nevertheless, GMAC, by arguing that the publication of the
Massey opinion provided notice, implicitly concedes that
Daniel did not receive individual notice or other actual
notice.

The relevant determination, then, is whether
publication of an opinion constitutes constructive notice,

---

6. Ala.R.Civ.P. 23(c)(2) provides for notice as
follows for those classes where the class member may opt
out:

> "In any class action maintained under
> subdivision (b)(3), the court shall
> direct to the members of the class the
> best notice practicable under the
> circumstances, including individual
> notice to all members who can be
> identified through reasonable effort.
> The notice shall advise each member that
> (A) the court will exclude the member
> from the class if the member so requests
> by a specified date; (B) the judgment,
> whether favorable or not, will include
> all members who do not request
> exclusion; and (C) any member who does
> not request exclusion may, if the member
> desires, enter an appearance through
> counsel."

Fed.R.Civ.P. 23(c)(2)(B) is substantively identical and
is unchanged by the December 1, 2007, amendments to the
Federal Rules of Civil Procedure.

and the court finds that it does not.  As the Supreme

Court stated in <u>Mullane v. Central Hanover Bank & Trust</u>

<u>Co.</u>,

> "when notice is a person's due, process
> which is a mere gesture is not due
> process.  The means employed must be
> such as one desirous of actually
> informing the absentee might reasonably
> adopt to accomplish it.  The
> reasonableness and hence the
> constitutional validity of any chosen
> method may be defended on the ground
> that it is in itself reasonably certain
> to inform those affected."

339 U.S. 306, 315 (1950).  Daniel's case was dismissed in

1995, and the <u>Massey</u> class was not decertified until 2004.

An absent class member's rights cannot be destroyed so

wantonly by mere publication of a court opinion in books

that are read mainly by lawyers.  Daniels therefore did

not receive adequate Rule 23(e) notice.

The second question is whether the state courts'

failure to give Daniel adequate Rule 23(e) notice warrants

extending the 60-day requirement in this court's November

1995 dismissal order.  To be sure, equitable tolling has

been applied to certain statutes of limitations when "a

13

movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." <u>Sandvik v. United States</u>, 177 F.3d 1269, 1271 (11th Cir. 1999). These requirements serve to distinguish cases meriting the closely guarded remedy of equitable tolling from "garden variety claim of excusable neglect." <u>Irwin v. Dep't of Veterans Affairs</u>, 498 U.S. 89, 96 (1990).

However, the 60-day requirement, which controls here, differs from a statute of limitations in two respects. First, because the parties here agreed to the 60-day requirement, it is akin to a contractual arrangement between them and, as such, should not be lightly modified absent unforeseen circumstances. <u>Cf</u>. <u>Reynolds v. Roberts</u>, 202 F.3d 1303, 1312 (11th Cir. 2000) ("Long standing precedent evinces a strong public policy against judicial rewriting of consent decrees. A district court may not impose obligations on a party that are not unambiguously mandated by the decree itself.") (citation and quotation marks omitted). Second, unlike with a statute of

14

limitations, the parties through their agreement tailored the 60-day requirement to the specific circumstances presented in this case and in <u>Massey</u>, and thus it is not unreasonable to assume that, if the parties wanted the 60-days to begin to run only upon notification pursuant to Ala.R.Civ.P. 23(e), they could have asked this court to include such in its November 1995 order.

But of greatest concern here is the fact that Daniel waited over three years after the state-court's class decertification to file his motion to reinstate.   Even assuming that some extension of the 60-day period is allowable, this court must conclude that a three-year extension would be a far stretch.   To be sure, it could be reasonably argued that Daniel was not required to hover over the <u>Massey</u> litigation, from moment to moment, to see whether and when something might happen that could affect his rights.   But it is also reasonable to expect that he would check the litigation periodically--perhaps, every few months or even every year--which he did not do.   In this vein, it is unreasonable for Daniel to have waited

15

almost 12 years, from 1995 to 2007, personally to check on the status of the state case.   Indeed, he should have begun checking long before then on the case's status to see whether a final disposition of the class issues had been made.

Daniel maintains that one of GMAC's attorneys orally promised that she would notify his attorney of any final class disposition in <u>Massey</u>.   Even if this is true (and GMAC denies that such promise was made), after Daniel had heard nothing from the GMAC attorney regarding the final disposition of the class issues in <u>Massey</u>, he should have begun making his own regular inquiries long, long before 2007 when he filed his motion to reinstate.   Absent a court order or written agreement with opposing parties expressly allowing such lengthy inattention, it was unreasonable for Daniel to have waited 12 years without making his own independent and regular inquiries about the status of the <u>Massey</u> litigation.   The picture would be different if GMAC's attorneys had actually misled Daniel and his attorney regarding the status of the

16

<u>Massey</u> litigation, but there is nothing to support such.

In conclusion, even in the face of Rule 23(e)'s notice requirements and even considering any oral agreement Daniel may have had with opposing counsel to be notified, this court holds that Daniel did not have a sempiternal right to file his reinstatement motion at any time outside the 60-day period without any obligation of due diligence and reasonable vigilance--indeed, any diligence and vigilance at all--on his part.  Daniel's reinstatement motion is untimely.  <u>See</u> Fed.R.Civ.P. 60(c)(1) (the Rule(b)(6) motion "must be made within a reasonable time").

### B. Whether Claims Against GMAC
### Are Barred as Mandatory Counterclaims

As stated, Daniel had the unconditional right under the November 1995 order to have this case reinstated only within the 60-day period set forth in that order; outside that 60-day period, whether this case should be reinstated rests on whether the specific circumstances of this case

warrant this court's exercise of its Rule 60(b) equitable power.  GMAC contends that an extension outside the 60-day period is not warranted here because Daniel's claims are barred as mandatory counterclaims anyway.

Daniel's fraud and conspiracy claims are barred if they were compulsory counterclaims that should have been alleged in GMAC's September 1993 collection suit.  Alabama law governs the question of whether Daniel's claims were compulsory counterclaims in the earlier action.  <u>See Montgomery Ward Dev. Corp. v. Juster</u>, 932 F.2d 1378, 1380 (11th Cir. 1991) ("Whether failure to bring a compulsory counterclaim in a prior state court proceeding bars a diversity action on that claim in a federal district court ... depends upon state law."); <u>see also Amey, Inc. v. Gulf Abstract & Title, Inc.</u>, 758 F.2d 1486, 1509 (11th Cir. 1985) ("Where the first suit is brought in state court and the second suit is brought in federal court based on diversity, state law of res judicata is to be applied.").  Since state "door-closing policies" (such as the bar from failure to bring a compulsory counterclaim) "control what

18

diversity actions can be brought in federal courts,"
<u>Cleckner v. Republic Van and Storage Co.</u>, 556 F.2d 766,
769 (5th Cir. 1977),[7] Daniel's claim should be barred here
if the same suit would be barred in an Alabama state
court.

Alabama's compulsory counterclaim rule tracks Rule
13(a) of the Federal Rules of Civil Procedure, whose
purpose is "to prevent multiplicity of actions" by
"[resolving] in a single lawsuit ... all disputes arising
out of common matters." <u>S. Constr. Co. v. Pickard</u>, 371
U.S. 57, 60 (1962). Ala.R.Civ.P. 13(a) requires that a
pleading "state as a counterclaim any claim which at the
time of serving the pleading the pleader has against any
opposing party, if it arises out of the transaction or
occurrence that is the subject matter of the opposing
party's claim." According to Alabama Rule 13(a), if such
a counterclaim is not brought with the original action,
"relitigation of the claim may be barred by the doctrines
of res judicata or collateral estoppel by judgment in the

_____

7.   <u>See supra</u> note 3.

19

event certain issues are determined adversely to the party electing not to assert the claim." Id. Therefore, while the bar resulting from failure to bring a compulsory counterclaim is not identical to the bar of res judicata, the "principles of res judicata" govern. Cleckner, 556 F.2d at 769 (citing Dupuy-Busching Gen. Agency v. Ambassador Ins. Co., 524 F.2d 1275, 1277 (5th Cir. 1975)).

Alabama courts have interpreted the rule realistically and broadly to avoid a "wasteful multiplicity of litigation on claims that arose from a single transaction or occurrence." Grow Group, Inc. v. Indus. Corrosion Control, Inc., 601 So.2d 934, 936 (Ala. 1992). In its efforts to avoid inefficiency, the Alabama Supreme Court has concluded that a "counterclaim is compulsory if there is any logical relation of any sort between the original claim and the counterclaim." Ex parte Cincinnati Ins. Cos., 806 So.2d 376, 380 (Ala. 2001) (quoting Ala.R.Civ.P. 13(a), Committee Comments on 1973 Adoption of Rule 13, at ¶ 6); see also Akin v. PAFEC Ltd., 991 F.2d 1550, 1561 (11th Cir. 1993). The leading Alabama case on this issue,

<u>Brooks v. Peoples National Bank of Huntsville</u>, holds that a counterclaim is barred if "the original claim and the counterclaim arose out of the same aggregate core of operative facts."  414 So.2d 917, 919 (Ala. 1982).  To determine whether the claims arise from the same core of operative facts, a court should ask if "the facts taken as a whole serve as the basis for both claims" or whether "the sum total of facts upon which the original claim rests creates legal rights in a party which would otherwise remain dormant." <u>Ex parte Cincinnati Ins. Cos.</u>, 806 So.2d at 380 (Ala. 2001) (quoting <u>Ex parte Canal Ins. Co.</u>, 534 So.2d 582, 584 (Ala. 1988)).  If the court concludes that a counterclaim should have been tried with the original suit, according to the Alabama Supreme Court, it is barred by principles of res judicata and collateral estoppel.  <u>Ex parte Water Works</u>, 738 So.2d 783, 792-93 (Ala. 1998).

Applying Ala.R.Civ.P. 13 to this case, the court concludes that Daniel's fraud and conspiracy claims must be recognized as compulsory counterclaims in GMAC's prior

collection action. Daniel's claims, if tried, would involve substantially the same facts at issue in the earlier suit--including, most notably, the circumstances surrounding GMAC's acquisition of insurance for Daniel. Both suits distill to the simple question of what GMAC told Daniel about whether he would continue to owe payments under his retail installment contract even if the car were involved in an accident. See, e.g., Ex parte Water Works, 738 So.2d at 789 (utility's claim for delinquent payment of bills was compulsory counterclaim in user's suit for illegal overcharges on the same bills); Ex parte Fletcher, 429 So.2d 1041, 1044 (Ala. 1982) (in collection suit, counterclaim on Truth in Lending Act disclosure was compulsory because "the note is the common basis for both claims" and its terms "are integral parts of the contract"). In response to GMAC's collection suit, Daniel should have defended himself by arguing that GMAC misled him into believing that the insurance policy would relieve him of any obligations after an accident, for a "claim for fraud is an affirmative defense in an action

for default." Brooks, 414 So.2d at 919.  Instead, as
Daniel stated in his motion to set aside the judgment in
the state-court collection suit, he "took no further
action with respect to protecting any interest in
connection with" GMAC's collection suit, since he believed
that his insurance policy would cover his remaining
balance.  Defs.' Ex. G (Doc. No. 65).

All told, Alabama's compulsory-counterclaim standard--
asking "if there is any logical relation of any sort
between the original claim and the counterclaim," Ex parte
Cincinnati Ins. Cos., 806 So.2d at 380-- significantly
understates the extent to which the parties' claims are
bound together here.  Because Daniel's claims are barred
as a "matter which might or ought to have been litigated
in a prior proceeding," Brooks, 414 So.2d at 920, this
court therefore refrains from exercising its Rule 60(b)
equitable power to reinstate his claims.

Daniel may protest that this ruling denies him his day
in court.  While that is literally true, since he may not
reinstate his suit, the legal truth is that Daniel's

designated day in court came and went more than 13 years ago.

## C. Claims Against MIC

The court has thus far referred to only GMAC, but Daniel also sued MIC, GMAC's insurer, on a theory of respondeat superior. Because Daniel presents no viable claims as to the alleged agent, GMAC, there are no wrongs for which he can hold MIC, the alleged principal, responsible. See United Steelworkers of Am. AFL-CIO-CLC v. O'Neal, 437 So.2d 101, 103 (Ala. 1983) ("[W]here respondeat superior is the sole basis of recovery, a verdict in favor of the agent works [as] an automatic acquittal of the principal.").

***

For the above reasons, Daniel's motion to reinstate will be denied. An appropriate judgment will be entered.

DONE, this the 7th day of August, 2007.

                    /s/ Myron H. Thompson
                UNITED STATES DISTRICT JUDGE